UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| AMERICAN ELECTRIC POWER COMPANY, INC., AMERICAN ELECTRIC POWER SERVICE CORPORATION AND CENTRAL AND SOUTHWEST CORPORATION | : : : : : : | CIVIL ACTION NO. 02-CV-1133 SECTION D MAG. DIV. M2 |
| VERSUS | : : | |
| AFFILIATED FM INSURANCE COMPANY | : : | |

PLAINTIFFS' OPPOSITION TO
STATEMENT OF FACTS AS TO WHICH NO GENUINE ISSUE EXISTS,
SUBMITTED IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION
OF CLAIMS, BY DEFENDANT AFFILIATED FM INSURANCE COMPANY
(ABSENCE OF COVERED STATUS)

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, American Electric Power Company, Inc., American Electric Power Service Corporation, and Central and Southwest Corporation (collectively, "AEP"), who respectfully submit the following Opposition to Statement of Facts as to Which Genuine Issue Exists submitted by Defendant, Affiliated FM Insurance Company, as follows:

**AFFILIATED STATEMENT NO. 1.** Section VII(F) of Affiliated's Fidelity and Crime Policy No. BC 478 hereafter "the Affiliated Policy") (copy of which was included as Exhibit "A" to the Complaint filed herein (Dkt. No. 1)), provides:

> The Policy Period is shown in the Declarations. Subject to the LOSS SUSTAINED DURING PRIOR Insurable condition, this Company will pay only

for loss that the insured sustains through acts committed or events occurring during the Policy Period.

See also, "Affiliated FM Insurance Company's Memorandum in Support of Motion for Summary Judgment, or, in the Alternative, Motion for Summary Adjudication of Claims" (hereafter, the "Affiliated Memorandum"), at Exhibit "A" thereof.

***AEP's RESPONSE TO STATEMENT NO 1*** *AEP admits that the quoted language appears in the Affiliated Policy, but avers that the language is only a selected provision of the policy and must be taken in context with all other policy provisions and conditions as may be applicable in this case.*

**AFFILIATED STATEMENT NO. 2.** The effective date of The Affiliated Policy was 12:01 a.m. on October 1, 2000; the Policy Period stated in the Affiliated Policy was from "01-Oct-2000 to 01-Oct-2002 (12:01 a.m. standard lime at the mailing address [of the Named Insured])." Affiliated Memorandum, Exhibit "A"; see also, Affiliated Answer (Docket No. 6), First Defense.

***AEP's RESPONSE TO STATEMENT NO 2*** *AEP does not dispute that this particular Affiliated Policy contains the effective date provisions as recited above. Again, the Affiliated Policy must be construed in the context of all of its terms and conditions and not only partial and selected provisions. Further, Affiliated had issued a previous policy providing coverage for policy period October 1, 1999 to October 1, 2002. See Edwards Affidavit, Ex. 1.*

**AFFILIATED STATEMENT NO. 3.** This case does not concern any alleged "loss that the Insured sustains through acts committed or events occurring during the Policy Period" of the Affiliated Policy therefore, the AEP Plaintiffs must base their case on the "Loss Sustained During Prior Insurance" condition of the Affiliated Policy (Affiliated Policy, supra, Section III(E) (hereinafter referred to as the "Prior Loss Clause"). See also, Affiliated Policy, supra (page 8 of 15), Section III(F) ("Policy Period").

***AEP's RESPONSE TO STATEMENT NO 3*** *This is denied as the case involves losses that occurred and which are covered by the Prior Loss provisions of the Affiliated Policy with a policy date of October 1, 2000 to October 1, 2002 as well as acts and losses during the policy period of the subject policy. The losses of AEP resulted from materially false information prepared and provided by the Smiths so that the Smiths could collect personal benefits including, but not limited to: salary, bonuses, tax distributions and other payments, which payments continued into early 2001 are alleged in part, in paragraphs 19, 26, 28, 34 and 35. Further, see Mr. Gagnet's Affidavit, Exhibit 4, paragraph 17 which confirms these continuing losses, as reflected in the various Nuvest company documents. Further, the acts of misrepresentation and*

*deception for the personal benefit and gain of the employees continued after the effective date of the Affiliated Policy.*

**AFFILIATED STATEMENT NO. 4.** The "Prior Loss Clause" of the Affiliated Policy (Section 111(E) thereof) appears in full as follows:

**LOSS SUSTAINED DURING PRIOR INSURANCE**  E. I. If the Insured, or any predecessor in interest, sustained loss during the period of any prior insurance that the Insured or any predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, this Company will pay for it under this insurance provided,

    (a) this insurance became effective at the time of cancellation or termination of prior insurance; and

    (b) this loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

2. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

    (a) this insurance as of its effective date; or

    (b) the prior insurance had it remained in effect.

(<u>Affiliated Memorandum</u>, Exhibit "A").

*AEP's RESPONSE TO STATEMENT NO 4* *AEP does not dispute that the Affiliated Policy contains the "Loss Sustained During Prior Insurance" provision as recited above. Again, the Affiliated Policy must be construed in the context of all of its terms and conditions as applied to the facts of this case rather than selected provisions.*

**AFFILIATED STATEMENT NO. 5.** In Paragraph 11 of the Complaint, the AEP Plaintiffs allege;

Coverage is also afforded under The Policy as there was "Prior Insurance" coverage in force and effect. An Executive Protection Policy, also referred to as a Crime Policy, had been issued by CHUBB, effective December 30, 1999, pursuant to policy number 809519-34P DAL. The CHUBB policy named as

> insureds "Central and Southwest Corporation and any subsidiary corporation(s) now existing or hereafter created or acquired." The CHUBB policy provided limits of liability of $20,000,000 on various coverages including employee theft and provides coverage for up to $1,000,000 in investigative costs. A copy of the declaration page of the CHUBB policy is attached hereto and made a part hereof as Exhibit C.
>
> (<u>Affiliated Memorandum</u> Exhibit "C"). A complete and correct copy of the CHUBB Policy referenced in Paragraph 11 of the Complaint appears as Exhibit "L" of the Affiliated Memorandum (such Policy is hereafter referred to as the "CHUBB Policy").

***AEP's RESPONSE TO STATEMENT NO 5*** *AEP admits that Affiliated has quoted the allegations of paragraph 11 of its Complaint which confirms that coverage is "also" afforded under the cited provisions. AEP also admits that Affiliated has attached a copy of the policy referenced in Paragraph 11 as Exhibit "L" to its motion papers. It should also be noted that the Declarations Page of the Executive Protection policy identifies the "Parent Organization" as "Central and Southwest Corporation." Further, Affiliated has not attached the fax of CHUBB of April 9, 1998 advising CSW, through its broker, that an LLC was "automatically covered" under the respective CHUBB policy as the policy was issued to "Central and Southwest" as the Parent Organization and that CHUBB insured CSW and its subsidiaries. This fax is attached to an Affidavit from CHUBB, submitted in opposition to Affiliated's motion, confirming these facts and the coverage afforded to all CSW subsidiaries, including LLCs. CHUBB Affidavit, Ex. 2.*

**AFFILIATED STATEMENT NO. 6.** The Policy Period of the CHUBB Policy was from 12:01 A.M. on December 30, 1999 to 12:01 A.M. on December 30, 2000 (Affiliated Memorandum, Exhibit "L," Declaration Page, Employers Protection Policy).

***AEP's RESPONSE TO STATEMENT NO 6*** *AEP admits that the CHUBB policy attached as Exhibit L to Affiliated's motion papers bears the policy period recited. AEP further responds that CHUBB issued similar policies, providing the same type of coverage identifying CSW Corporation as the Parent Organization and identifying the Name of Insured as "Central and Southwest Corporation and any subsidiary corporation(s) now existing or hereafter created or acquired" for policy periods preceding and following the policy period of the policy attached as Exhibit "L" to Affiliated's motion. See the affidavit of Dave Edwards, attached to AEP's Opposition Memorandum as Exhibit 1and the CHUBB Affidavit attached to the Opposition Memorandum as Exhibit 2.*

**AFFILIATED STATEMENT NO. 7.** In Paragraph 12 of the Complaint filed herein (Affiliated Memorandum. Exhibit "C"), the AEP Plaintiffs alleged, "On or about February, 1996, Nuvest LLC ("Nuvest"), a subsidiary of CSW, was formed for the purpose of acquiring and operating non-regulated energy industry companies."

- 4 -

402512v.1

***AEP's RESPONSE TO STATEMENT NO 7***   *AEP admits that it made the allegation quoted in paragraph 12 of its Complaint. AEP also references the Affidavit of Mr. Rod Burnham, attached to AEP's opposition as Exhibit 3, for a detailed discussion of the formation of Nuvest, LLC and the funding, ownership and accounting and controls by PSO.*

**AFFILIATED STATEMENT NO. 8.**   In Paragraph 13 of the Complaint, the AEP Plaintiffs alleged:

> On or about February, 1996, Nuvest acquired N.S.S. Numanco, Inc. and Nuvest formed a wholly-owned subsidiary, Numanco, LLC ("Numanco"). Numanco is an Oklahoma LLC [Limited Liability Company] authorized to do and doing business in the State of Louisiana.

***AEP's RESPONSE TO STATEMENT NO 8***   *AEP admits that it made the allegation quoted in paragraph 13 of its Complaint but Affiliated is only quoting individual paragraphs and not the entire Complaint or all relevant paragraphs in the Complaint. (See also Affidavit of Rod Burnham and Ronald Gagnet.)*

**AFFILIATED STATEMENT NO. 9.**   The only employment relationship involving the Smiths alleged by the AEP Plaintiffs is with Nuvest/Numanco "as well as other Nuvest/Numanco subsidiaries that were subsequently formed." (Complaint, ¶14).

***AEP's RESPONSE TO STATEMENT NO 9***   *AEP admits that it alleged an employment relationship and that this employment relationship was with the subsidiary companies, Nuvest, LLC and Numanco, LLC, which companies also include various corporations and LLCs. However, the statement is incomplete as the Complaint contains numerous allegations which allege the employment relationship including, for example, paragraphs 17, 18, 19, 20 & 23.*

**AFFILIATED STATEMENT NO. 10.**   Section Vll(D) of the Affiliated Policy (Affiliated Memorandum, Exhibit "A"), which appears on Page 12 of 15 thereof defines "Employee" as:

> D. Employee or Employees means, respectively, one or more persons while on the regular service of any Insured in the ordinary course of the Insured's business during the term of this Policy and whom any Insured compensates by salary, wages and/or commissions and has the right to direct and control in the performance of such service; and shall also mean:
>
> 1. any non-compensated officer of any Insured,
>
> 2. any ex-Employee for a period not exceeding 60 days following termination of such person's services,

3. any director or trustee of any Insured whether or not compensated, while performing acts coming within the scope of the usual duties of an Employee or member of any committee duly selected or appointed to examine or audit or have custody of the property of the Insured,

4. any individual or individuals assigned to perform Employee duties for any Insured, within the Insured's Premises, by any agency furnishing temporary personnel on a contingent or part-time basis; provided, however, that this Policy does not cover any loss caused by any such individual if such loss is also covered by any insurance or suretyship held by the agency furnishing such temporary personnel to the Insured;

5. any one or more of the natural persons while in the service of any Employee Benefit Plan (included as Insured herein) as fiduciary, trustee, administrator, officer or employee or other natural person required to be bonded by the Employee Retirement Income Security Act, and

6. any retired Employee retained as a consultant.

**AEP's RESPONSE TO STATEMENT NO 10**     *AEP admits that the above quoted language appears in the Affiliated Policy. Again, the Affiliated Policy must be construed in the context of all of its terms and conditions as applied to the facts of this case. However, the affidavits of CHUBB, Mr. Edwards, Mr. Gagnet and Mr. Burnham confirm that coverage was afforded to all CSW subsidiaries, with corporations and LLCs and that the Nuvest companies were subsidiaries. AEP has also clearly alleged that Mr. and Mrs. Smith were covered employees.*

**AFFILIATED STATEMENT NO. 11.**     There is no allegation in the Complaint or in any other pleading filed herein of any employment relationship between the Smiths and AEP or CSW or any subsidiary corporation thereof. (<u>Affiliated Memorandum</u>, Exhibit "C").

**AEP's RESPONSE TO STATEMENT NO 11**     *Denied.  AEP's complaint specifically includes numerous allegations of the employment relationship between the Smiths and subsidiaries of AEP and/or CSW, i.e., Nuvest, LLC and Numanco, LLC which companies include corporations and LLCs  (see for example, paragraphs 12 and 17 and the many paragraphs cited in response to No. 9 above).   It is also noted that the CHUBB policy defines "Employee" as:*

> ***Employee***, *either in the singular or plural, means one or more persons while in the regular service of any insured in the ordinary course of the **Insured's** business during the term of this coverage section and whom any **Insured** compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service; . . .*

*Nuvest, LLC and Numanco, LLC are "Insureds" under the CHUBB policy (see affidavits of CHUBB and Dave Edwards attached as Exhibits 2 and 1 to AEP's Opposition Memorandum) and, therefore, the Smiths are employees for purposes of the CHUBB policy.*

**AFFILIATED STATEMENT NO. 12.** The Declaration Page of the Crime Coverage Section of the CHUBB Policy (Exhibit "C" to the Complaint and as part of the <u>Affiliated Memorandum</u>, Exhibit "L"), documents the insureds under that section of the policy as "CENTRAL AND SOUTHWEST CORPORATION AND ANY SUBSIDIARY CORPORATION(S) NOW EXISTING OR HEREAFTER CREATED OR ACQUIRED."

***AEP's RESPONSE TO STATEMENT NO 12*** *This statement is correct in part but incomplete. Affiliated quotes in part the Declarations Page but does not quote the applicable provisions in their entirety or accurately. First, the Declarations Page under the Executive Protection Policy names the Parent Organization as Central and Southwest Corporation. The Declarations Page of the crime policy also identifies the "Name of Insured" as Central and Southwest Corporation and any subsidiary corporation(s) now existing or hereafter acquired." (See CHUBB Policy attached to Opposition Memorandum as part of Edwards Affidavit, Exhibit 1.)*

**AFFILIATED STATEMENT NO. 13.** Under the plain and unambiguous terms of Section (1) of the Prior Loss Clause, there can be coverage under the Affiliated Policy for the allegations asserted by the AEP Plaintiffs only if there is also coverage under the CHUBB Policy.

***AEP's RESPONSE TO STATEMENT NO 13*** *Denied as written. AEP has asserted a claim for losses occurring during the term of the Affiliated policy with a policy date beginning October 1, 2000 through October 1, 2002 and a claim under the subject Affiliated policy under the Prior Loss clause. (See Complaint and Affidavit of Ronnie Gagnet, Exhibit 4.)*

**AFFILIATED STATEMENT NO. 14.** At all pertinent times, Nuvest and Numanco were limited liability companies, not subsidiary corporations. As a matter of law, a limited liability company is an unincorporated entity-- not a corporation. 18 Okl.St.Ann. §2001(9 and 11). Cf. Complaint, ¶'J12 and 13 (<u>Affiliated Memorandum</u>, Exhibit "C").

***AEP's RESPONSE TO STATEMENT NO 14*** *This statement is denied as it is incomplete and further requires a legal conclusion. Nuvest, LLC and Numanco, LLC were limited liability companies, although there was also a Numanco, Inc., as a part of the Nuvest and Numanco companies. Further, Nuvest, LLC was the parent, with Numanco, LLC being an operating company, and the Nuvest Companies, consisting of various corporations and LLCs, with Nuvest and its companies being subsidiaries of CSW and AEP, et al. (See Affidavit of Rod Burnham, Exhibit 3, and Ronald Gagnet, Exhibit 4.)*

- 7 -

**AFFILIATED STATEMENT NO. 15.** At all pertinent times, PSO was a wholly owned electric utility subsidiary of CSW; CSW was in turn a registered holding company existing under the auspices of the Public Utilities 44 & Holding Company Act of 1935 ("PUHCA").15 U.S.C. § 79 to 79z-6, repealed effective 02/08/06. Consequently, continued compliance with PUHCA required CSW/PSO's application and reporting to the SEC concerning the various transactions that framed PSO's participation in the Nuvest/Numanco venture.

*AEP's RESPONSE TO STATEMENT NO 15    Denied to the extent it requires legal conclusion and further, the fact has no relevance to an interpretation of an insurance policy. It is admitted that Public Service Company of Oklahoma was a wholly owned electric utility of Central and Southwest Corporation and that Central and Southwest Corporation was a public utility registered holding company. The Public Utility Holding Company Act of 1935 was a specialized and limited act, designed to address particular business operations of public utilities but with no applicability whatsoever to the insurance coverages relevant to this case. It is also agreed that the Public Utility Holding Company Act was repealed. Further, PSO did submit the appropriate information to the SEC, whereby PSO provided initial funds such that Nuvest could purchase the assets and stock of Numanco, LLC with PSO initially owning 70% of the Nuvest Companies. PSO also initially provided guarantees up to $12 million with the Bank of Oklahoma, and exercised significant contractual controls as are discussed in more detail in the Affidavits of Mr. Rod Burnham and Mr. Ronnie Gagnet, attached as Exhibits 3 and 4.*

**AFFILIATED STATEMENT NO. 16.** The SEC's regulatory oversight of the Nuvest/Numanco venture began on July 16, 1996, with PSO's filing of its "Form U-1 Application" (Exhibit "E" to the Affiliated Memorandum). Five amendments to the Form U-1 Application would eventually be filed by PSO with the SEC through the period of PUHCA oversight (i.e., through December 31, 1999), but none of the amendments materially changed the elements of the Form U-I Application and the SEC's Approval Order thereon (Affiliated Memorandum, Exhibits "E," "Q" and "R").

*AEP's RESPONSE TO STATEMENT NO 16    Denied as written as the paragraph is incomplete and the statement does not accurately and completely reflect the subsidiary relationship between PSO and the Nuvest Company, which companies consisted of corporations and LLCs. It is admitted that PSO made the necessary filings with the SEC, including Form U-1, with various amendments during which time PSO had a 70% ownership, provided capital for the Nuvest companies, and provided guarantees in the amount, initially of $12 and up to $18 million. Further, the ownership of CSW increased from 70% to 92.9% in 1999. Tthe losses and profits of Nuvest Companies were reported on the financial statements of their parent company, PSO.  See Affidavits of Mr. Rod Burnham and Mr. Ronnie Gagnet, attached as Exhibits 3 and 4.*

**AFFILIATED STATEMENT NO. 17.** In its Form U-1 Application (Affiliated Memorandum, Exhibit "E"), PSO sought the SEC's authorization for PSO's conversion of a portion of its initial loan into an equity interest in Nuvest. PSO explained that Nuvest would borrow $3 million from a third party, to be guaranteed by PSO, and use the loan proceeds to facilitate repayment to PSO of all but $700,000 of the money P80 had originally loaned for the acquisition of Numanco. In addition, Nuvest would obtain a $9 million line of credit that PSO would guarantee. The $700,000 would be converted into an equity interest, giving PSO a 70% interest in the capital contributions, profits and losses of Nuvest, and reducing Monika Smith's interest in Nuvest to 30%. The Form U-1 Application specified, however, that PSO would obtain only 4.9% of the membership voting interest in Nuvest, with Monica Smith retaining a 95. L% interest.

*AEP's RESPONSE TO STATEMENT NO 17    Denied as written as it is incomplete and inaccurate. The U-1 Application by PSO sought authority for the acquisition of the Numanco, Inc. stock and assets, on behalf of Nuvest, LLC, pursuant to a funding agreement for $3.7 million. The SEC approved the $3.7 million advance allowing PSO to convert $700,000 of its $3.7 million advance into a capital contribution and, with the use of loan proceeds, to facilitate repayment to PSO of the funds except for $700,000. PSO initially owned 70% of the Nuvest Companies. Further, PSO was initially authorized to guarantee Nuvest obligations, in the aggregate not exceeding $12 million and did execute those guarantees with the Bank of Oklahoma. Further, the various Operating and Members Agreements and the SEC approval contained restrictions upon the manager and among other things, recognized a Reallocation of Vote provision whereby, in the event of certain defaults, PSO's voting interest would automatically increase to 51%, with PSO continuing to own 70% of Nuvest. Further, the respective Operating and Members Agreements contain other specific restrictions upon the Manager and requirements concerning the "vote" of Monika Smith's interest so as to comply with representations and warranties to AEP and to protect AEP's majority interest. See Affidavits of Mr. Rod Burnham and Mr. Ronnie Gagnet, attached as Exhibits 3 and 4.*

**AFFILIATED STATEMENT NO. 18.**    PSO therefore couched its application to the SEC upon the statutorily significant premise that PSO would not hold voting securities in excess of 5%:

> As PSO will not hold 'voting securities' within the meaning of the Act in excess of 5% of the issued and outstanding membership voting interests of either Nuvest or Numanco LLC after the consummation of the contemplated transactions, it is the position of PSO that neither Nuvest nor Numanco LLC will be a subsidiary company of the Company within the meaning of Section 2(a)(8)(A) of the Act 115 U.S.C. §79b(a)(8)(A)1, nor will it be an affiliate of the Company within the meaning of Section 2(a)(11)(A) of the Act U.S.C. §79b(a)(11)(A)j. In addition, except possibly in certain situations after an Event of Default, the amount and

type of securities of any Numanco Company held by PSO would not provide PSO with the means to direct the management and affairs of such Numanco Company.

(<u>Affiliated Memorandum</u>, Exhibits "E").

***AEP's RESPONSE TO STATEMENT NO 18*** *Denied as written. This statement is a legal opinion, quoting at length from Affiliated's Memorandum and containing Affiliated's opinions concerning the "statutorily significant premise" and further, this contention, based upon the limited provisions of the now repealed Public Utility Holding Company Act, has no application whatsoever to the subject insurance policies. Further, this is a legal conclusion without reference to the facts. It ignores PSO's majority ownership and continued furnishing of capital, as well as guarantees, such that the Nuvest and its various companies, all subsidiaries, could operate. See Affidavits of Mr. David Edwards, Mr. Rod Burnham and Mr. Ronnie Gagnet, attached as Exhibits 1, 3 and 4.*

**AFFILIATED STATEMENT NO. 19.** Thus, as represented by PSO itself, neither Nuvest nor Numanco would be subsidiaries or• LLC affiliates of PSO, nor would PSO have the power to direct the management and affairs of Nuvest or Numanco.

***AEP's RESPONSE TO STATEMENT NO 19*** *Denied. See Response to 16, 17 and 18 above. CSW Corporation was a Parent Organization with PSO being a direct subsidiary. The Nuvest Companies, including corporations and LLCS were clearly subsidiaries of PSO and later, of CSW Energy, Inc. The financial and accounting facts confirm the subsidiary nature of the companies for purposes of this insurance claim. The profits and losses of the Nuvest Companies were incorporated and reported merely as a part of the PSO financial statements. In addition to having substantial control over finances, PSO had substantial other controls pursuant to Members and Operating Agreements. Further, the members were required "to vote" in such a manner so as to provide significant controls and oversight to PSO, including for example, the approval of a detailed Business Plan as well as detailed financial reporting. The agreements even contained a reallocation of voting provision, so in the event of certain occurrences, including breaches of obligations under the agreement, PSO would be deemed a 51% voting interest owner. CSW ownership in Nuvest increased to 92.9% in 1999 with majority voting control and other substantial controls over the Nuvest Companies.*

**AFFILIATED STATEMENT NO. 20.** The SEC approved PSO's Of U-I Application in its "SEC Approval Order" of December 30, 1996. Public Utility Holding Company Act of 1935: Public Service Company of / Oklahoma Order Authorizing Acquisition of Common Stock and Guarantees, File No. 70- 8887, Release No. 35-26638,1996 W.L. 742509, 1996 SEC LEXIS 3510, dated December 30, 1996 (Exhibit "Q" to the <u>Affiliated Memorandum</u>).

***AEP's RESPONSE TO STATEMENT NO 20***   *Denied as written as incomplete. It is admitted that the SEC approved PSO's U-1 Application however, Affiliated has quoted only selected provisions from the Order such that the statement is not complete and therefore inaccurate. Further, the application of the SEC's approval of the U-1 and the Public Utility Holding Act of 1935, has no application to the subject insurance policy. Further, the applicable SEC approval, also referenced the reallocation of voting provisions, whereby PSO would become a 51% owner in the event of acts of default, but this is omitted from the statement by Affiliated.*

**AFFILIATED STATEMENT NO. 21.**   As set forth in the SEC Approval Order, the SEC expressly found:

> As PSO will not hold 'voting securities' within the meaning of the Act in excess of 5% of the issued and outstanding membership voting interests of either Nuvest or Numanco LLC after the consummation of the contemplated transactions, it is the position of PSO that neither Nuvest nor Numanco LLC will be a subsidiary company of the Company within the meaning of Section 2(a)(8)(A) of the Act [15 U.S.C. §79b(a)(8)(A)], nor will it be an affiliate of the Company within the meaning of Section 2(a)(11)(A) of the Act [15 U.S.C. §79b(a)(11)(A)]. In addition, except possibly in certain situations after an Event of Default, the amount and type of securities of any Numanco Company held by PSO would not provide PSO with the means to direct the management and affairs of such Numanco Company. If an Event of Default should occur, PSO would limit its control over the Numanco Companies to one or more of the following: (i) electing a new Manager for either or both of Nuvest or Numanco LLC, (ii) electing new officers for either or both of Nuvest or Numanco LLC, (ii) electing a new Manager for either or both of Numanco, Inc., (iii) overseeing the development of a restructured operating plan, and/or (iv) liquidating and dissolving the Numanco Companies.

***AEP's RESPONSE TO STATEMENT NO 21***   *This is denied as written as Affiliated has only quoted from selected provisions of the approval that the SEC provided to the PSO U-1, therefore it is incomplete and inaccurate. It is agreed that the SEC approval of the U-1 included the language cited above, however, this provision has no application whatsoever to an insurance policy. Significantly, this provision as cited does not provide complete facts as it does not reference the fact that PSO owned 70%, provided initial capital investment and provided Bank of Oklahoma guarantees, initially up to $12 million and later increasing to $18 million, which were necessary for the Nuvest Companies to continue operations. Further, this selective statement does not set forth, accurately or entirely, the contractual rights of PSO including certain restrictions over management as well as the requirements "to vote" the remaining interest in such a manner that PSO could protect its majority interest. Further there was a default pursuant*

*to the agreements making the reallocation of voting rights applicable, which information, along with other information, was concealed from PSO and AEP (See Affidavits of Rod Burnham, Exhibit 3, and Ronald Gagnet, Exhibit 4.)*

**AFFILIATED STATEMENT NO. 22.** Given the absence of any Event of Default involving Numanco, there was no "resulting change in the membership voting interests held by PSO in the Numanco Companies and any exercise of control by PSO over the management and affairs of the Numanco Companies," and the covenants originally set forth by CSW/PSO in the Form U-I Application remained valid through the period of SEC oversight. <u>Affiliated Memorandum</u>, Exhibit "I"

***AEP's RESPONSE TO STATEMENT NO 22** Denied. CSW's ownership was never less than 70% and increased to 92.9% in the applicable years. Further, there were material misrepresentations by the Nuvest Companies employees constituting events of default, (which were concealed from PSO and CSW) such that the allocation of voting rights provisions applied and PSO contractually had 51% voting rights, in addition to majority ownership. (See Affidavit of Ronnie Gagnet.)*

**AFFILIATED STATEMENT NO. 23.** The Numanco PSO loan and guaranty transactions with the Bank of Oklahoma ("BOK") during the period of UP}ICA oversight also involved formal representations by PSO's representatives that the subject financial transactions were "not subject to the jurisdiction of the Securities and Exchange Commission ("SEC") under the 1935 Act because the Borrower [Numanco] is not an 'affiliate' or 'subsidiary' of the Company or CSW as defined under the 1935 Act." See Milbank Tweed opinion letters dated June 4, 1998 (Bates No. P44401 et seq), October 9, 1998 (Bates No. P-44070), February 28, 1999 (AEP Plaintiffs' Bates No. Pages P-45030 et seq.) and June 21, 1999 (Bates No. P-43634), attached as Exhibit "S" to <u>Affiliated Memorandum</u>.

***AEP's RESPONSE TO STATEMENT NO 23** This response is denied to the extent it requires a legal conclusion but particularly, is inaccurate, incomplete and references selected provisions of a limited opinion letter which has no applicability whatsoever to the insurance coverage issues in this case. Affiliated attaches various opinion letters, which are by definition, limited in scope as they are issued by "special counsel to the company under the Public Utility Holding Company Act of 1935, as amended." The opinion further confirms, among other things, that PSO is a "wholly owned electric utility subsidiary of Central of Southwest Corporation (CSW)" and it authorizes the guarantee by PSO, of up to $12 million for Nuvest companies. It also provides that PSO, if necessary, may file an "amendment seeking SEC authorization for the increase in voting interest." The opinion, on its face, is limited in scope as it provides that the special SEC counsel expresses "no opinion as to any law of any jurisdiction other than the Public Utility Holding Act of 1935, as amended" and that "this opinion letter is provided to you solely in our capacity as special 1935 Act counsel to the company and CSW and*

*may not be relied upon by any person for any purpose other than in connection with the transaction contemplated by the certificate…".*

<u>*Pertinent facts concerning the insurance coverage issue*</u>*. The subsidiary nature of PSO and the Nuvest Companies, and including the financial and accounting issues confirm the subsidiary status of all CSW companies, whether they be corporations or LLCs and are set forth in the affidavits of Mr. Edwards, Mr. Burnham and Mr. Gagnet, attached to the opposition memo as Exhibits 1, 3 and 4.*

**AFFILIATED STATEMENT NO. 24.** The AEP Plaintiffs are judicially estopped from claiming affiliate or subsidiary status for Nuvest or Numanco or from asserting that they controlled Nuvest or Numanco at any time through the end of 1999.

*Denied. This is a legal conclusion that is not supported by and is contrary to the facts. The CHUBB policy does not define subsidiary or even refer to or otherwise adopt the PUHCA restrictive definition of "subsidiary" and the terms and provisions of the applicable insurance policy are controlling. Unlike PUHCA, insurance policies are to be liberally construed in favor of coverage and to carry out the intention of the parties. The CHUBB policy was intended to cover the Parent Organization, CSW, which certainly included the Nuvest Companies. CSW had at all times, at least a 70% equity interest, capital investments, guaranteed debt up to $18 million and had other substantial rights and controls. In this case, the policy language and the intention of the insurer and insured was that Central and Southwest Corporation was the Parent Organization, and that the CHUBB policy was issued to insure the Parent Organization, CSW and its subsidiaries, whether they be LLCs or corporations. (See Affidavits of Mr. Burnham, Exhibit 3, and Mr. Gagnet, Exhibit 4.) A reasonable interpretation of "subsidiary," as shown by the dictionary definitions and common sense includes Nuvest and its subsidiaries.*

**AFFILIATED STATEMENT NO. 25.** Any employees of Nuvest, L.L.C. and Numanco, L.L.C. were not covered under the CHUBB Policy, and therefore could not be not covered under the Affiliated Policy through operation of the Prior Loss Clause.

***AEP's RESPONSE TO STATEMENT NO 24*** *Denied. Both the insured and the insurer confirmed that CSW and/or AEP subsidiary entities, regardless of form, were insured under the CHUBB policy. See Affidavits of CHUBB and Mr. Edwards, Exhibits 2 and 1.*

**AFFILIATED STATEMENT NO. 26.** Crime Coverage Section 12 of the CHUBB Policy ("Joint lnsureds") contains the provision that, "The Company [CHUBB] shall not be liable for loss sustained by one Insured to the advantage of any other Insured." (emphasis in original)(see, <u>Affiliated Memorandum</u>, Exhibit "L").

***AEP's RESPONSE TO STATEMENT NO 25*** *Affiliated has cited one selected sentence from the policy, without referencing the entire terms and conditions of the policy. The selected quoted clause is not a part of the policy exclusions and contains terms nowhere defined in the policy. The phrase "advantage of another insured" is nowhere defined in the policy and is not a financial or accounting term which has a customary meaning to accounting professionals and is vague. (See Affidavit of Mr. Gagnet, Exhibit 4, paragraph 12.) AEP has specifically alleged that due to the material misrepresentations and fraud, the employees sustained substantial personal benefits and gains while AEP sustained substantial losses, which were to the detriment of AEP. See Affidavit of Mr. Gagnet, Exhibit 4, including paragraphs 12 through 17.*

**AFFILIATED STATEMENT NO. 27.** Even assuming arguendo, that Nuvest and Numanco are insureds under the Affiliated/CHUBB line (which Affiliated denies), and even assuming that AEP could possibly be an insured under the CHUBB line (again, a legal impossibility), the clear and unambiguous terms of the CHUBB Policy preclude coverage for the following damage claims asserted in the Complaint: (a) the alleged $15,000,000 "equity infusion" from CSW to Nuvest; (b) the alleged "$22,700,000 payment in bank debt to the Bank of Oklahoma made on or about September 2000;" and (c) alleged "guarantees of additional debts as of December 31, 2000 for the Nuvest/Numanco companies in excess of $18 million." Complaint, ¶ 34 and 35 (Affiliated Memorandum, Exhibit "C"). All of these alleged "losses" involve allegations of an "Insured's" actions made for the advantage of Nuvest and Numanco. M

***AEP's RESPONSE TO STATEMENT NO 26*** *Denied. AEP has alleged in detail that the substantial and material "losses" by the CSW and AEP companies resulted in the material personal gain to Richard and Monika Smith based upon the continuing material misrepresentations and fraud and to the substantial detriment of AEP, et al. The Indictment cites, in substantial detail, covered acts resulting in substantial losses to AEP, including the alleged "schemes and deceitful means to obtain monies in the accounts of Numanco for their personal benefit...". See also the Affidavit of Mr. Gagnet, wherein he describes, as an example, monies deposited by PSO in April, 1999, and the Smiths promptly paying themselves a portion of said funds. The Smiths received substantial and ongoing financial benefits through fraud and misrepresentation and which schemes resulted in substantial loss and harm to CSW, AEP and their subsidiaries. (See Affidavit of Mr. Gagnet, Exhibit 4.)*

**AFFILIATED STATEMENT NO. 28.** All of the alleged elements cited in the preceding paragraph involve alleged "loss[es] sustained by one Insured to the advantage of any other Insured." Coverage for all is therefore precluded under this "Sister Loss Provision" of the CHUBB Policy and the Prior I '/L' Loss Clause of the Affiliated Policy.

**AFFILIATED STATEMENT NO. 29.**

**AEP's RESPONSE TO STATEMENT NO 27**   *This is denied.  There were substantial personal gains for the employees and losses for AEP pursuant to the scheme and repeated material misrepresentations.  (See Response to No. 27 above and Affidavit of Ronnie Gagnet.).*


**TAYLOR, PORTER, BROOKS, & PHILLIPS L.L.P.**


By    /s/  W. Shelby McKenzie
   **W. Shelby McKenzie (#10020)**
   **451 Florida Street, 8th Floor**
   **P.O. Box 2471**
   **Baton Rouge, LA  70821**
   **Phone: 225-387-3221**
   **Fax: 225-346-8049**

**WILKINSON, CARMODY & GILLIAM**
**Bobby S. Gilliam (#6227)**
**Mark E. Gilliam (#6228)**
**Misty M. Futrell (#29871)**
**400 Travis Street, Suite 1700**
**Shreveport, LA  71101**
**(318) 221-4196**
**(318) 221-3705 (fax)**
 *Attorneys for Plaintiffs, American Electric Power*
 *Company, Inc., American Electric Power Service*
 *Corporation, and Central and Southwest Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of Court of the U.S. District Court, Middle District of Louisiana by using the CM/ECF system which will send a notice of electronic filing to the following:

**KREBS, FARLEY & PELLETERI, L.L.C.**
Mr. Charles A. Nunmaker
Mr. David J. Krebs
Ms. Diane L. Matthews
Ms. Krystil Borrouso Lawton
400 Poydras Street, Suite 2500
New Orleans, Louisiana 70130

ATTORNEYS FOR DEFENDANT,
AFFILIATED FM INSURANCE COMPANY

Baton Rouge, Louisiana, this 12th day of March, 2007.

      /s/ W. Shelby McKenzie
      **W. Shelby McKenzie (#10020)**