| | | |
|---|---|---|
| AMERICAN ELECTRIC POWER COMPANY, INC., AMERICAN ELECTRIC POWER SERVICE CORPORATION AND CENTRAL AND SOUTHWEST CORPORATION | * * * * * | CIVIL ACTION NO. 02-CV-1133 |
| VERSUS | * * | SECTION "D" |
| AFFILIATED FM INSURANCE COMPANY | * | MAG. DIV. "M2" |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF**
**MOTION TO STRIKE AND OBJECTIONS TO AFFIDAVITS SUBMITTED IN**
**OPPOSITION TO "MOTION FOR SUMMARY JUDGMENT, OR, IN THE**
**ALTERNATIVE, MOTION FOR SUMMARY ADJUDICATION OF CLAIMS, BY**
**DEFENDANT, AFFILIATED FM INSURANCE COMPANY"**

**MAY IT PLEASE THE COURT:**

The defendant herein, Affiliated FM Insurance Company ("Affiliated") submits this memorandum of points and authorities in support of its "Motion to Strike and Objections to Affidavits Presented in Opposition to 'Motion for Summary Judgment, or in the Alternative, Motion for Summary Adjudication of Claims by Defendant, Affiliated FM Insurance Company'" (the "Affiliated Motion to Strike"). Affiliated's Motion to Strike is directed against four affidavits included with the March 12, 2007 opposition of the "AEP Plaintiffs" [the plaintiffs herein, American Electric Power Company, Inc. ("AEP"), American Electric Power Service Corporation ("AEPSC") and Central and Southwest Corporation ("CSW")] to Affiliated's "Motion for Summary Judgment, or in the Alternative, Motion for Summary Adjudication of Claims" on January 29, 2007 (Docket No. 181)(the "Affiliated Summary Judgment Motion"). The AEP Plaintiffs' "Opposition Memorandum," together with exhibits consisting of the subject affidavits and attachments thereto, appears as Docket No. 198 of this case.

Specifically, the AEP Plaintiffs included four affidavits with their "Opposition Memorandum," as follows:

| AEP OPPOSITION EXHIBIT NUMBER | AFFIANT |
|---|---|
| 1 | David Edwards |
| 2 | Evan J. Rosenberg |
| 3 | Rod Burnham |
| 4 | Ronnie L. Gagnet |

Affiliated submits that these affidavits do not constitute proper or probative evidence for consideration in opposition to a motion for summary judgment, for the reasons that such constitute inadmissible parol evidence, are not made on personal knowledge, contain or are based upon inadmissible evidence, and otherwise include speculation, irrelevant matters or opinion and other evidentiary flaws, and/or include and seek to introduce inadmissible documentary materials, or are otherwise flawed as evidence to be considered in connection with the examination and adjudication of a motion for summary judgment. Accordingly, Affiliated moves, pursuant to Fed.R.Civ.P. 56(e) and the Federal Rules of Evidence, that all four affidavits be stricken and/or excluded from consideration in the examination and resolution of the Affiliated Motion for Summary Judgment.

## GENERAL CONSIDERATIONS

The requisite characteristics for proper evidence to be considered in a summary judgment motion are set forth in Rule 56(e) of the Federal Rules of Civil Procedure. Only competent, admissible evidence can be considered. The basic tenets are fully discussed in the venerable Wright and Miller treatise:

[B]ecause an affidavit is an ex parte statement by a witness whose demeanor cannot

be observed, more reliable forms of proof should be used in place of or to supplement an affidavit when that is possible and appropriate.

Rule 56(e) provides that when affidavits are used to support or oppose a summary-judgment motion, they 'shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.' These requirements are mandatory. . . .

\* \* \*

Turning to the requirements for affidavits used on summary judgment motions, the first requisite is that the information they contain (as opposed to the affidavits themselves) would be admissible at trial. Thus, ex parte affidavits, which are not admissible at trial, are appropriate on a summary-judgment hearing to the extent they contain admissible information. . . .

Because the policy of Rule 56(e) is that the judge should consider any material that would be admissible at trial, the rules of evidence and the exceptions thereto determine what averments the affidavit may contain. . . .

\* \* \*

In addition to the admissibility requirements just discussed, Rule 56(e) further limits the matter to be properly included in an affidavit to facts, and the facts introduced must be alleged on personal knowledge. Thus, ultimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion. Similarly, the mere reargument of a party's case or the denial of an opponent's allegations will be disregarded. . . .

Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, 10B Federal Practice and Procedure: Civil 3d, § 2738 (West, 1998 and 2000 supp.). Speculative statements, being void of underlying personal knowledge, are not proper summary judgment evidence; unsupported speculation and conjecture are insufficient to defeat a motion for summary judgment. *Id.*, Fed.R.Civ.P. 56(e). The AEP Affidavits contain hearsay evidence, legal conclusion, and legal speculation. To that extent, the affidavits are clearly inadmissible. Statements constituting hearsay are not competent summary judgment evidence. Okoye v. University of Texas Houston Health Service Center, 245 F.3d 506, 510 (5th Cir. 2001)(n. 5). Id.; see also Fed.R.Evid. 601, 602, 702 and 703; Knox v. Neaton Auto

<u>Products Manufacturing, Inc.</u>, 375 F.3d 451, 457 (6th Cir. 2004)(upheld exclusion of inadmissible hearsay within hearsay under Fed.R.Civ.P. 56(e)); <u>G. F. Co. v. Pan Ocean Shipping Co., Ltd.</u>, 23 F.3d 1498, 1507 (9th Cir. 1994)(n. 6); <u>GST Telecommunications, Inc. v. Irwin</u>, 192 F.R.D. 109 (S.D.N.Y 2000). The AEP Affidavits also contain legal conclusion and opinion, incorrect and improper characterization of the evidence, and argument. As such, the proffered affidavits are highly prejudicial, and are neither relevant nor admissible. The affidavits are factually inapposite and irrelevant. Fed.R.Evid. 401-403, 703; <u>Askanase v. Fatjo</u>, 130 F.3d 657, 673 (5th Cir. 1997).

Generally, the rules governing the construction of an insurance policy are set out in Section III of the reply memorandum submitted by Affiliated contemporaneously herewith (the "<u>Affiliated Reply Memorandum</u>," at pp. 9-14). Affiliated incorporates that discussion of points and authorities as if set forth herein *in extenso*. Affiliated's Reply Memorandum discusses both Louisiana law and Texas law.[1]

## BRIEF SYNOPSIS OF AFFILIATED'S SUMMARY JUDGMENT MOTION

The Affiliated Summary Judgment Motion is focused around two basic points. First, under the clear and unambiguous terms of the named insured clause of the "Chubb Policy," there can be no issue of material fact to prevent the conclusion that Nuvest, L.L.C. and Numanco, L.L.C., were not and could not be insureds under that policy. The Named Insured under the Chubb Policy is

---

[1] In its original "<u>Affiliated Memorandum</u>" ["Affiliated FM Insurance Company's Memorandum in Support of Motion for Summary Judgment, or in the Alternative, Motion for Summary Adjudication of Claims," Docket No. 182, filed January 29, 2007], at pages 8-9, Affiliated explained that under the choice of law rules of the forum (Louisiana), in the event of a conflict, Ohio law would govern the interpretation of the Affiliated Policy. *See*, La.C.C.art. 3537. Affiliated set out both Louisiana and Ohio authorities at footnote 10 of its <u>Affiliated Memorandum</u>. The same rationale applies to consideration of the Chubb Policy (which was issued and delivered to CSW in Texas), and in the event of a conflict with Louisiana law, Texas law would apply.

defined as "'Central & Southwest Corporation and any subsidiary corporation(s) now existing or hereafter created or acquired." Chubb Policy, Declarations Page, Item 1 (Page 1 of 13). Secondly, Affiliated submits that the "Sister Loss Clause" of the Chubb Policy prohibits any recovery by the AEP Plaintiffs for three particular alleged losses. The clause states, "The Company [Chubb] shall not be liable for loss sustained by one **Insured** to the advantage of any other **Insured**." [Chubb Policy, Crime Coverage Section 12 (emphasis in original)].[2]

## ARGUMENT

## I.    THE AEP AFFIDAVITS CONSTITUTE INADMISSIBLE PAROL EVIDENCE

Affiliated has established that the words of the Affiliated Policy and of the "prior" "Chubb Policy" are plain and clear.[3] There is no ambiguity to be interpreted, and speculation or opinion as to the meaning of the terms of the Chubb Policy have no place in this proceeding.   Since the AEP Affidavits constitute an inadmissible and proscribed attempt to contravene the plain and clear meaning of the policies, and thereby to preach to the Court what the legal findings in this case should be, such are inappropriate for trial or summary judgment purposes.

> Insurance policies are controlled by rules of interpretation and construction which are applicable to contracts generally.   The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument.   *If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. Parol evidence is not admissible for the purpose of creating an ambiguity.*
>
> If, however, the language of a policy or contract is subject to two or more reasonable

---

[2]/ A copy of the "Chubb Policy" (Policy No. 8095-19-34P DAL, which was in effect from December 30, 1999 until it was cancelled in 2000) is appended to the Affiliated Memorandum as Exhibit "L."   Generally, abbreviated terms herein have the meaning assigned to them in the Affiliated Memorandum.

[3]/ Affiliated Memorandum, pp. 12-25; Reply Memorandum, pp. 2-9.

interpretations, it is ambiguous. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation and admit extraneous evidence to determine the true meaning of the instrument.*

National Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex.1995)(emphasis added and all citations omitted).[4] At note 5 of its opinion in National Union, the Texas Supreme Court added, ". . . [N]o issue regarding the parties' intentions is raised *unless* the policy is ambiguous--and evidence of those intentions cannot be used to create an ambiguity." *Id*, 907 S.W.2d at 521. *See also,* Fiess v. State Farm Lloyds, 202 S.W.3d 744 (Tex. 2006), *answer to certified question applied,* 472 F.3d 383 (5th Cir, 2006). Louisiana law is in accord with all of these principles. *See,* La.C.C.art. 2046; Halpern v. Lexington Ins. Co., 715 F.2d 191, 192 (5th Cir. 1983), *aff'g,* 558 F.Supp. 1280 (E.D.La.); Amoco Production Company v. Fina Oil & Chemical Company, 95-1185, p. 12, (La.App. 1st Cir. 02/23/96), 670 So.2d 502, 511; Mid-Continent Underwriters, Inc. v. Rodrigue, 323 So.2d 518, 521 (La.App.4th Cir., 1975).

The AEP Affidavits, and particularly the Edwards, Rosenberg and Burnham Affidavits, constitute and contain parol evidence submitted by the AEP Plaintiffs in contravention of the plain terms of the Chubb Policy. No legal foundation has been established for the introduction of parol, and in law and in fact, the terms of the Chubb Policy cannot be so modified.

## II. THE AFFILIATED SUMMARY JUDGMENT MOTION DOES NOT DEAL WITH THE CULPABILITY VEL NON OF THE SMITHS, AND REFERENCES IN THE

---

[4] In its original Affiliated Memorandum (at pages 8-9), Affiliated explained under the choice of law rules of the forum (Louisiana), in the event of a conflict, Ohio law would govern the interpretation of the Affiliated Policy. *See,* La.C.C.art. 3537 . Affiliated set out both Louisiana and Ohio authorities at footnote 10 of its Affiliated Memorandum. The same rationale applies to consideration of the Chubb Policy (which was issued and delivered to CSW in Texas), and in the event of a conflict with Louisiana law, Texas law would apply.

**AEP OPPOSITION MEMORANDUM AND IN THE AEP AFFIDAVITS TO THE FEDERAL INDICTMENT OF THE SMITHS ARE IRRELEVANT AND OBJECTIONABLE, AND SHOULD BE STRICKEN.**

As used in a contemporaneous civil proceeding, a federal grand jury indictment concerning an open criminal case constitutes nothing more than an unproven, hearsay accusation against a criminal defendant. "A criminal indictment is only an accusatory document and is proof of nothing." Stanford Trading Company v. V.R.I. Distribution Corp., 2003 WL 21662828, *3 (N.D.Tex., No. 98-0591, 07/14/03). The court in Stanford Trading refused to consider an indictment is addressing a motion for summary judgment. In Kerr v. City of Chicago, 424 F.2d 1134, 1139 (1970), a civil rights case brought under 42 U.S.C. §1983, the United States Seventh Circuit Court of Appeals approved a jury instruction that contained the following statement: "An indictment for a crime by a grand jury is nothing more than an accusation of such crime and is not to be considered as being any evidence that plaintiff committed any such crime." *Accord*, Scholes v. African Enterprise, Inc., 854 F.Supp. 1315, 1324 (N.D.Ill. 1994), *aff'd*, 56 F.3d 750 (7th Cir. 1995) (indictment found inadmissible on objections of hearsay, lack of probative value and its conclusory nature; the district court agreed with the objecting parties that the indictment contained mere allegations and was not evidence).[5] Finally, in Chen v. Mayflower Transit, Inc., 315 F.Supp.2d 886 (N.D.Ill. 2004), a summary judgment case, the district court granted a defendant's motion to strike and excluded indictments on grounds of irrelevance and hearsay. "The indictments do not prove that any of the conduct described therein actually occurred or that, if it did occur, the conduct was criminal." The court approvingly endorsed the defendant's argument that, "an indictment is nothing but an

---

[5]/ The appellate court opinion affirmed the subject holding without substantive discussion; the bulk of the appellate opinion concerned a separate district court holding involving different party defendants.

allegation by a prosecutor, with the review . . . of a grand jury. It is not a judicial decision . . . and in itself proves nothing." (interior quotation marks omitted). *Id* at 922.

Affiliated objects to the AEP Plaintiffs' attempted introduction of the Smith Indictment through Mr. Gagnet's affidavit and moves to strike the Indictment (Gagnet Affidavit, Exhibit "A") and any reference in the Gagnet Affidavit (¶¶ 4, 11-16) or in the AEP Opposition Memorandum to the allegations of the Indictment. Alternatively, Affiliated moves that such information not be considered in connection with the Affiliated Summary Judgment Motion. Affiliated's objections are based upon hearsay and irrelevance (Fed.R.Evid. 401-403 and 801 *et seq.*). The Smiths have not proceeded to trial and they have entered "not guilty" pleas in their criminal proceeding. Nothing surrounding the Smith Indictment can give rise to genuine issue of material fact to overcome the Affiliated Summary Judgment Motion.

## III.  OBJECTIONS AS TO THE PARTICULAR AFFIDAVITS

### 1.  The Affidavit of David Edwards

The Edwards' affidavit (Exhibit "1" to the AEP Opposition Memorandum, hereafter referred to as the "Edwards Affidavit") is replete with hearsay, speculation and unsupported opinion. In paragraph 5, Mr. Edwards states that he began working with Central and Southwest Corporation (CSW) as an insurance analyst in 1999, and was then promoted to senior analyst. Therefore, Mr. Edwards had no personal involvement with any policy in the Chubb line that pre-dated 1999.

Paragraph 8 of the Edwards affidavit is incorrect as a matter of law. Mr. Edwards claims that the CSW's ownership "included, but was not limited to, . . . and Nuvest, LLC, as well as Nuvest, LLC's subsidiary corporation and limited liability companies." As a matter of law, CSW Entergy Services, Inc. owned only a membership interest in Nuvest, LLC, an Oklahoma Domestic Limited

Liability Company; CSWESI did not own Nuvest, *per se* (Capvest, L.L.C. (the Smiths' company) owned the remainder of the membership interests in Nuvest). Nuvest, L.L.C. in turn owned a membership interest in Numanco, L.L.C., and Numanco owned various entities. Being incorrect as a matter of law, paragraph 8 of the Edwards affidavit carries no probative weight, is irrelevant, lacks any indication of personal knowledge or basis, and should be stricken. *C.f.*, 18 Okl.St.Ann.§ 2032 (2005); Reply Memorandum, at pp. 2-5.

The expression of statements of "intent" in paragraph 12 of the Edwards Affidavit constitutes inadmissible evidence in variance of the unambiguous terms and provisions of the Chubb policy. With the exception of the first two sentences, the entire paragraph constitutes an inadmissible parol evidence, hearsay and speculation. There is no expression of any basis for first hand knowledge of the statements contained in the paragraph, and the same statements are irrelevant.

Paragraphs 13 and 14 of the Edwards Affidavit are irrelevant, constitute hearsay, and are inadmissible parol evidence. The paragraphs incorporate Exhibit "B" to the Rosenberg affidavit, (which will be discussed *infra),* and include the same document as Edwards Exhibit "3." Statements contained within paragraphs 13 and 14 of the Edwards Affidavit do not indicate that they are made upon the affiant's personal knowledge, are therefore speculative, and appear to have been taken straight from the Rosenberg Exhibit. Paragraph 13 purports to present a quoted clause ("subsidiary of Central & Southwest") from the Rosenberg Exhibit/Edwards Exhibit 3, but that clause nowhere appears in the exhibit. Certainly, Mr. Edwards' expressions as to the animus of a third party entity are entirely speculative and void of personal knowledge. As established by his own affidavit, he was not even employed by CSW when Edwards Exhibit 3 was issued. The affidavit statements are also hearsay, they are irrelevant, they are parol evidence, and they are inadmissible. Affiliated refers to

9

its discussion of the Rosenberg Affidavit for additional points and authorities establishing the inadmissability of paragraphs 13 and 14 of the Edwards Affidavit. In any event, Affiliated moves that Paragraphs 13 and 14 and Exhibit "3" of the Edwards Affidavit be stricken or disregarded on the bases set forth.

Paragraphs 16 and 17 of the Edwards Affidavit are blatantly incorrect and inadmissible. Paragraph 16 suggests that *Affiliated* issued a policy for the period October 1, 1999 through October 1, 2002 (Policy No. 02040203) and thereupon added an endorsement (Change Endorsement No. 4) to expressly add CSW companies. In paragraph 17, Mr. Edwards suggests that the Affiliated policy at issue (Policy No. BC478) was "then" issued as a new policy, with an effective date of October 1, 2000 through October 1, 2002. Paragraphs 16 and 17 of the Edwards Affidavit are simply wrong. There was no Endorsement No. 4 to Policy No. 02040203 that added CSW as an insured, as is quite evident from review of Exhibit No. 4 to the Edwards Affidavit. In fact, Policy No. 02040203 was issued by Factory Mutual Insurance Company and at no time covered CSW, CSWESI, Nuvest, Numanco, or any related company. Endorsement No. 4 to Policy No. 02040203 did not add insureds. The Endorsement No. 4 to which Mr. Edwards mistakenly refers was issued in connection with *Affiliated* Policy BC478, and well after the October 1, 2000 effective date of that policy (albeit with the October 1, 2000 effective date), at the request of the AEP Plaintiffs. Endorsement No. 4 to Affiliated Policy BC478 (the Affiliated Policy) appears as part of Exhibit A to the <u>Affiliated Memorandum</u>. Because paragraphs 16 and 17 of the Edwards Affidavit are incorrect and lack any basis in fact or in law, they should be stricken in their entirety. The statements are irrelevant, incorrect, and not probative of any material fact. Having come from the CSW side, Mr. Edwards was not affiliated with AEP prior to the June 15, 2000 merger of CSW and AEP, and he had no first

10

hand involvement with Factory Mutual Insurance Company Policy No. 02040203. Therefore, he also lacks knowledge of that policy, and his statements constitute incorrect speculation. Affiliated also moves that Policy No. 02040203 (Exhibit "4" to the Edwards Affidavit) be stricken or disregarded on grounds of irrelevance.

Paragraph 18 of the Edwards Affidavit also stands in error and is inadmissible. National Union Fire Insurance Company of Pittsburgh, PA ("National Union") provided coverage to Nuvest, Numanco and other named insureds for a period of time from 1997 through at least 2001. In fact, the National Union coverage overlapped the term of the Affiliated Policy. National Union Policy No. 473-36-99, which covered the period from September 3, 2000 through September 3, 2001, is attached as exhibit J to the <u>Affiliated Memorandum</u>. That same exhibit also includes declaration pages for National Union policies for periods from 1997 through September 3, 2000. Paragraph 18 of the Edwards Affidavit therefore stands in factual error and is legally irrelevant to the extent that it reports National Union coverage only for the "1997-1999" time frame. Furthermore, the last statement of Paragraph 18 of the Edwards Affidavit is wholly irrelevant and unduly misleading in its characterization of the National Union response to the claim of the AEP Plaintiffs and the resolution thereof. As Exhibits "D" and "K" to the <u>Affiliated Memorandum</u> indicate, the AEP Plaintiffs actually sued National Union on December 19, 2002, one business day after suit was filed against Affiliated in the instant matter. The litigation carried over into the second half of 2003, when it was dismissed with prejudice, with a settlement having been reached between the parties. On the basis of all these facts, Affiliated moves that Paragraph 18 of the Edwards Affidavit be stricken in its entirety or disregarded as constituting hearsay, being unduly prejudicial and overly misleading and therefore irrelevant, and otherwise constituting unsupported and incorrect statements of fact.

11

## 2.    The Affidavit of Evan J. Rosenberg

The AEP Plaintiffs have submitted the affidavit of Mr. Rosenberg (<u>Opposition Memorandum</u>, Exhibit No. 2), purportedly as the statement of "Chubb & Son, a division of Federal Insurance Company." There is no foundation for any such submission.

### a.    The Rosenberg Affidavit Bears No Indicia of Having Been Made on Personal Knowledge

While the affidavit identifies Mr. Rosenberg as a present Chubb employee (one holding the undescribed position of "Product Manager"), it is silent as to whether he actually had any personal knowledge or involvement with the Chubb Policy [the fact that Mr. Rosenberg's name and title had to be inserted in handwriting in the affidavit mitigates against personal knowledge]. Paragraphs 2, 3 and 4 of the affidavit merely refer to hearsay evidence, and rather than setting forth statements of personal knowledge, the affiant simply recites hearsay. The affidavit is therefore inadmissible under Fed.R.Civ.P. 56(e) and Fed.R.Evid. 601 *et seq.* and 801 *et seq.* The Chubb Policy (Exhibit "A" to the affidavit) is itself the best evidence of its terms and provisions; it has already been introduced (without objection) as Exhibit "L" to the memorandum in support of Affiliated's Summary Judgment Motion. The affiant's characterizations of the terms of the policy are irrelevant, cumulative and inadmissible. Affiliated also refers to its discussion of the parol evidence bar, as presented above.

### b.    The Rosenberg Affidavit Contains and Includes Inadmissible Hearsay Evidence

Rosenberg Affidavit Exhibit "B" is an incomplete, hearsay document (being only page 1 of a 2 page fax) with no indication of any involvement on the part of the affiant. In fact, Affidavit Exhibit "B" is at least double hearsay. *C.f.,* <u>Knox v. Neaton Auto Products Manufacturing, Inc.</u>, *supra*, 375 F.3d at 457 (hearsay within hearsay stricken). The affiant is neither the author nor the

recipient of the document, nor is there any indication of his personal involvement or experience with the exhibit. Moreover, there is no indication of the document having come from the files of Chubb or otherwise being a business record maintained by Chubb; its origins are unestablished and uncertain [Bates No. AEP-01961 has not heretofore been produced by the AEP Plaintiffs]. It is dated prior to the December 30, 1999 inception date of the Chubb Policy. Moreover, the Chubb Policy contains no definition of "subsidiary," yet Exhibit "B" makes direct reference to "the definition of subsidiary."[6] Finally, Exhibit "B" describes "DECCO" as a "wholly owned subsidiary;" Mr. Burnham's affidavit contains information describing that company as being only 90% owned. Exhibit "B" also bears no handwritten signature, and it refers to an extrinsic conversation. In sum, the affidavit exhibit constitutes classic multi-leveled hearsay void of any semblance of evidentiary reliability. Given such defects, the exhibit is also irrelevant under Fed.R.Civ.P. 401-403. Finally, the document has not been properly authenticated and is not proper evidence under Fed.R.Civ.P. 56(e).

The affiant's recitation of statements from Exhibit "B" in the affidavit (at ¶ 3) also constitutes inadmissible hearsay and irrelevant material. The affiant merely embellishes and recites the statements of Exhibit "B," without any indication of a basis for independent knowledge. Exhibit "B" does not identify "Diversified Energy Services, LLC" as "DECCO," and also fails to establish "DECCO" as a limited liability company. Nonetheless, the affiant (or whoever prepared the affidavit) saw fit to so characterize the company.

### c. The Rosenberg Affidavit Contains Inadmissible Opinion

The last clause of Paragraph 4 of the Rosenberg Affidavit [*i.e.*, ". . . to insure the Parent

---

[6] / *See*, Affiliated Memorandum, Exhibit "L."

Organization and its subsidiaries"] is inadmissible opinion and speculation. First, Mr. Rosenberg has been neither tendered nor offered as a trial expert; and he has not been identified as such. Second, no probative factual basis exists for the clause. With no apparent independent means of foundation, the inadmissibility of Exhibit "B" of the affidavit renders the affiant's statement inadmissible as well.

### d. The Rosenberg Affidavit is Inadmissible and Irrelevant Because it Contravenes the Parol Evidence Rule

Finally, the entirety of the Rosenberg Affidavit constitutes inadmissible extrinsic evidence submitted to vary the plain and clear terms of the Chubb Policy; the affidavit is inadmissible parol and hearsay. *See*, Section I hereof.

### 3. The Affidavit of Rod Burnham

In March, 2005, Affiliated issued documentary subpoenas to several entities, including Arthur Andersen, L.L.P. In response, the AEP Plaintiffs filed motions to quash, first in this Court (Docket No. 107), and then in the United States District Court for the Northern District of Illinois (Civil Action No. 1:05-cv-03940). Both motions were unsuccessful (*see, e.g.*, Docket No. 126, Magistrate Judge Noland's Order of June 20, 2005). On both occasions, the AEP Plaintiffs submitted an affidavit from Mr. Burnham dated April 8, 2005 (see, Docket No. 108 of the instant case, as well as Exhibit "A" hereto, which is a copy of the affidavit as filed in the Illinois proceeding). In that "2005 Affidavit," Mr. Burnham stated as follows:

* * *

4. Arthur Andersen was the external auditors [sic] for CSW and substantially all of its wholly owned subsidiaries, consisting of approximately 50 or more affiliated or subsidiary companies. The many CSW companies operated not only in the United States but internationally.

14

5. CSW owned an interest in Nuvest/Numanco, LLC (Nuvest is the parent and Numanco is the operating company) and their various subsidiaries but Nuvest and Numanco maintained completely separate books, records and financial statements from CSW.

* * *

7. The other Arthur Andersen documents would relate to other CSW companies and not Numanco. These documents are voluminous and consist of thousands of financial records, documents and memoranda and work papers which contain the financial and proprietary information of other CSW companies but not Numanco. The books and records of CSW and its other subsidiaries do not incorporate the Nuvest/Numanco books and records but Nuvest/Numanco is only recorded as a single line entry reflecting CSW's ownership interest. In other words, the Nuvest/Numanco accounts and individual transactions do not appear in the books and records of CSW or its other subsidiaries.

*See*, Exhibit A hereto.

Affiliated submits that the "Burnham Affidavit" of 2007 (Exhibit "3" to the AEP Opposition Memorandum) constitutes irrelevant parol evidence and therefore is inadmissible (see discussion in Section I above). Beyond that, however, and as is established through comparison with the 2005 Affidavit, the Burnham Affidavit constitutes hearsay, lacks factual foundation or predicate based upon personal knowledge, contains improper opinion evidence and is completely irrelevant.

By way of example, paragraph 5 to the Burnham affidavit indicates that "CSW is the holding company that owned over 100 subsidiary companies, including corporations, limited liability companies and limited partnership." Paragraph 4 of the 2005 affidavit places the number at "approximately 50 or more affiliated or subsidiary companies." In comparison, the Edwards Affidavit states, "prior to and at the time of the June, 2000 merger with AEP, CSW, as a holding company, owned approximately 150 subsidiary companies, ... (Edwards Affidavit, ¶8). Mr. Gagnet, for his part, sticks with the "100" figure (Gagnet Affidavit (AEP Opposition Memorandum, Exh. 4), at ¶5). This wide divergence of factual representation establishes that such statements are

untrustworthy, lack personal knowledge, and constitute hearsay and irrelevant statements.

Paragraphs 6, 10 and 15 of the Burnham Affidavit incorrectly (as a matter of law) describe CSW as being a "parent" of Nuvest and "owning" Nuvest and the Nuvest companies. In fact, neither CSW nor CSWESI (nor PSO, for that matter) owned Nuvest or any of its companies; the CSW entities merely owned membership interests in such limited liability companies. 18 Okl.St.Ann.§ 2032 (2005). The affidavit statements are therefore incorrect, irrelevant, constitute improper legal characterization and opinion, and are therefore inadmissible.[7]

Paragraphs 7 and 8 of the Burnham Affidavit are entirely irrelevant; the thrust of Affiliated's Summary Judgment Motion is that neither Nuvest nor Numanco stand as insureds under the Chubb Policy. The identification of companies under the Nuvest/Numanco umbrella is wholly irrelevant.

Paragraph 9 of the Burnham Affidavit is correct to the extent that the equity ownership of membership interests in Nuvest held by PSO in the period from December, 1996 through November, 1999 was 70%; however, during that same time period, PSO held only 4.9% of the voting interests of Nuvest. Therefore, the affidavit statement is unduly misleading and irrelevant (Fed.R.Evid. 403).

The last sentence of paragraph 12 of the Burnham Affidavit is in conflict with the sections of the 2005 Affidavit quoted above. As such, the statement is irrelevant, unduly prejudicial, and

---

[7] As Affiliated set forth in detail in Section IV of its Reply Memorandum (at pp. 14-16), the involvement of Public Service Company of Oklahoma ("PSO") in the Nuvest/Numanco venture was regulated under the Public Utility Holding Company Act of 1935 ("PUHCA"), 15 U.S.C. §§ 79 to 79z-6 (repealed effective 02/08/06). Accordingly, PSO's participation (as well as that as CSW) was subject to regulatory oversight and reporting (all as is fully discussed in Affiliated's summary judgment papers). This period of regulatory control existed through the end of 1999, when CSWESI acquired membership interests in Nuvest from PSO, Capvest, L.L.C. and Nuvest. At that time, reporting under PUHCA shifted to "Rule 58" reporting, as opposed to "Rule 24" reporting, Even then, (and even now), CSWESI did not acquire full and complete ownership of Nuvest/Numanco. In fact, the ownership of membership interests by CSWESI was 92.9%; the Smiths' company, Capvest, held ownership of the remaining membership interests (and it apparently still does).

should be stricken. It is not probative of any material fact and lacks factual predicate based upon personal knowledge. Fed.R.Evid. 401 *et seq.*; 601 *et seq.*

Paragraph 14 of the Burnham Affidavit must be stricken for failure to comply with the terms and provisions of Fed. R. Civ. P. 56(e). The reference constitutes hearsay evidence, and the filings to which Mr. Burnham refers in that Affidavit were not attached thereto. Despite earnest effort, Affiliated has not been able to locate such text in the voluminous 1999 year-end filings of the nature described by Mr. Burnham. Therefore, the paragraph must be stricken, or at least disregarded in the summary judgment analysis.

### 4. The Affidavit of Ronnie L. Gagnet

On the whole, the Gagnet Affidavit (AEP Opposition Memorandum, Exhibit No. 4) advances legal conclusion, incorrect and improper characterization of the evidence, and argument. As such, the Gagnet Affidavit is highly prejudicial, and is neither relevant nor admissible. The report is factually inapposite and irrelevant. Fed. R.Evid. 401-403; 703; Askanase v. Fatjo, 130 F.3d 657, 673 (5th Cir. 1997). Legal opinions and conclusions of law of an expert are inadmissible and should be excluded from consideration by the trier of fact. Snap-Drape, Inc. v. Commissioner of Internal Revenue, 98 F.3d 194, 198 (5th Cir. 1996)(holding that district court did not abuse its discretion by refusing to admit into evidence expert reports that improperly contained legal conclusions and statements of mere advocacy); Huff v. United States, 273 F.2d 56, 61 (5th Cir. 1959). Fed.R.Evid. 704(a) provides that, "[e]xcept as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Although Fed.R.Evid. 704(a) "abolishes the per se rule against testimony on ultimate issues of fact," [Owen v. Kerr-McGee Corp., 698 F.2d 236, 239 (5th Cir.

1983)], that rule does not "open the door to all opinions" and certainly is not "intended to allow a witness to give *legal* conclusions." *Id.* at 240. The Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." Snap-Drape, 98 F.3d at 198 (citations omitted).[8] To the extent that the Gagnet Affidavit presents legal argument as opposed to material fact, it is inadmissible. The Gagnet Affidavit also contains hearsay evidence, legal conclusion, and legal and factual speculation. Therefore, the Gagnet Affidavit is objectionable on the additional bases of inadmissibility set forth under Fed.R.Civ.P. 56(e) and under Fed.R.Evid. 601, 602, 702 and 703; *see* G. F. Co. v. Pan Ocean Shipping Co., Ltd., 23 F.3d 1498, 1507 (9th Cir. 1994)(n. 6); GST Telecommunications, Inc. v. Irwin, 192 F.R.D. 109 (S.D.N.Y 2000).

Alternatively, as to particular portions of the Gagnet Affidavit, Affiliated moves to strike and objects as follows:

### a. Paragraphs 5 and 6 of the Gagnet Affidavit Contain Irrelevant and Incorrect Legal Conclusion.

Mr. Gagnet's expression of opinion in Paragraph 5 of the Gagnet Affidavit is irrelevant to any issue in the Affiliated Summary Judgment Motion. Additionally, Affiliated reiterates that neither AEP nor CSW (or any subsidiary corporation thereof) "owned" Nuvest, L.L.C. PSO and CSWESI owned membership interests in the L.L.C. (with the Smiths or their company, Capvest, L.L.C., owning the remainder interests), but at no time did PSO or CSWESI "own" Nuvest. During the time that PSO held 70% equity interests (through the end of 1999), its percentage of voting interests was only 4.9%. To the extent that Paragraphs 5 and 6 of the Gagnet Affidavit are overly

---

[8] *See also,* United States v. Hatchett, 918 F.2d 631, 639-40 (6th Cir. 1990)(excluding testimony about specific results of legal research); Adalman v. Baker, Watts & Co., 807 F.2d 359, 367-68 (4th Cir. 1986); United States v. Zipkin, 729 F.2d 384, 387 (6th Cir. 1984); and Marx & Co. v. Diners' Club, Inc., 550 F.2d 505, 510 (2d Cir. 1977).

prejudicial and immaterial in their presentation, Affiliated objects on the grounds of Fed.R.Evid. 401-403.

### b. Paragraph 11 of the Gagnet Affidavit Contains Unsupported and Irrelevant Speculation and Legal Conclusion.

Paragraph 11 of the Gagnet Affidavit contains statements as to the alleged culpability of the Smiths, and Affiliated objects to the admissibility of the paragraph on the grounds stated hereinabove. Furthermore, Mr. Gagnet's expression of opinion in the Paragraph constitutes blatant legal conclusion and speculation. Even as a potential trial expert, it is not Mr. Gagnet's prerogative to draw ex post facto and speculative legal conclusions as to an agreement that lapsed of its own accord at the end of 1999 without any declaration of default. Affiliated objects on grounds of the statement of improper legal conclusion, speculation, lack of factual foundation, and irrelevance.

### c. The Culpability *vel non* of the Smiths Is Irrelevant to the Matters Set Forth in the Affiliated Summary Judgment Motion.

The issue of the guilt or innocence of the Smiths is irrelevant to the Affiliated Summary Judgment Motion. The thrust of Affiliated's motion is that the AEP Plaintiffs have no right of recovery under the Affiliated Policy for the bases asserted in the Motion itself. The Affiliated Summary Judgment Motion simply does not involve the culpability of the Smiths. Even if one were to assume that the Smiths are culpable (which the Smiths have denied and which has not otherwise been established), that assumption cannot give rise to any genuine issue of material fact that can defeat the Affiliated Summary Judgment Motion.

### d. Mr. Gagnet's Statements Can Not Give Rise to Ambiguity in the Sister Loss Provision of the Chubb Policy, and So, Are Irrelevant and Inadmissible

The Sister Loss Provision of the Chubb Policy states, "The Company [Chubb] shall not be

liable for loss sustained by one **Insured** to the advantage of any other **Insured**." [Chubb Policy, Crime Coverage Section 12 (emphasis in original)]. Mr. Gagnet opines (in ¶12 of his affidavit) that the Provision contains no "financial or accounting term which has a customary meaning to accounting professionals." He then immediately proceeds with discussion of the Smiths' alleged culpability and wrongful gain (¶¶ 13-18). The Sister Loss Provision is clear, plain and free of ambiguity. Mr. Gagnet's legal opinion concerning the provision is irrelevant and inadmissible, as are his comments concerning the Smiths.[9] As stated in Section II of this Memorandum, Affiliated also objects to the admissibility of the Smith Indictment (Exhibit A" to the Gagnet Affidavit) and references thereto by Mr. Gagnet and the AEP Plaintiffs.

Under the controlling case law, therefore, the affidavit and potential trial testimony of Mr. Gagnet should be precluded. This evidence is irrelevant and has the irrefutable premise of usurping the fact-finder's role, and is therefore improper as a matter of law.

> **e.** **The Statements of Paragraph 18 of the Gagnet Affidavit are Irrelevant to the Point that No Covered "Acts Committed or Events Occurr[ed] during the Policy Period" of the Affiliated Policy.**

As Affiliated explained in its Reply Memorandum, whether or not the Smiths received contractual payments after the effective date of the Affiliated Policy (October 1, 2000) is entirely irrelevant to the point that there is no genuine issue of material fact that no covered act or event

---

[9] Affiliated repeats that Mr. Gagnet's personal opinions as to the culpability of the Smiths are irrelevant and inadmissible. Fed.R.Evid. 704(a) provides that, "[e]xcept as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Although Fed.R.Evid. 704(a) "abolishes the per se rule against testimony on ultimate issues of fact," [Owen v. Kerr-McGee Corp., 698 F.2d 236, 239 (5th Cir. 1983)], that rule does not "open the door to all opinions" and certainly is not "intended to allow a witness to give *legal* conclusions." *Id.* at 240. The Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." Snap-Drape, 98 F.3d at 198 (citations omitted).

under the Affiliated Policy took place during its term. Section III(F) of the Affiliated Policy (Exhibit "A" to the <u>Affiliated Memorandum</u>, at page D-00675) provides,

> The Policy Period is shown in the Declarations. Subject to the LOSS SUSTAINED DURING PRIOR INSURANCE condition, this Company will pay only for loss that the Insured sustained through acts committed or events occurring during the Policy Period.

The Policy Period shown in the Declarations of the Affiliated Policy is from October 1, 2000 to October 1, 2002. *Id.*, at page D-00668.

Paragraph 18 of the Gagnet Affidavit is directed to this point, but includes statements only that the Smiths continued to receive financial benefits into 2001. The paragraph is irrelevant to the point at hand. It is not probative of "acts committed or events occurring during the Policy Period" and is inadmissible under Fed.R.Civ. P. 401 - 403.

## CONCLUSION

Affiliated moves on the basis of the points and authorities raised herein that affidavits of Messrs. Edwards, Rosenberg, Burnham and Gagnet, together with the exhibits thereto, should be stricken from the record and/or excluded from consideration in connection with Affiliated's Summary Judgment Motion. The AEP Affidavits neither constitute nor introduce admissible evidence in opposition to Affiliated's Summary Judgment Motion. The AEP Affidavits center around a legally proscribed attempt to alter the plain, legally established and recognized contract terms of the policies in question; therefore, they are improper as a matter of law. Affiliated also moves that any reference to the subject Affidavits and their exhibits that appears in the AEP Opposition Memorandum be stricken or disregarded as summary judgment evidence.

Respectfully submitted,
KREBS, FARLEY & PELLETERI, P.L.L.C.

_____
DAVID J. KREBS, T.A. (La. No. 01466)
e-mail: dkrebs@kfplaw.com
DIANE L. MATTHEWS (La.No. 01917)
e-mail: dmatthews@kfplaw.com
CHARLES A. NUNMAKER (La.No. 01510)
e-mail: cnunmaker@kfplaw.com
400 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3570
Facsimile: (504) 299-3582
ATTORNEYS FOR AFFILIATED FM
INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I do hereby certify that on this 27th day of March, 2007, a copy of the foregoing "Memorandum in Support of Motion to Strike and Objections to Affidavits Presented in Opposition to 'Motion for Summary Judgment, or in the Alternative, Motion for Summary Adjudication of Claims by Defendant, Affiliated FM Insurance Company'" was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Bobby S. Gilliam, Esq. by operation of the court's electronic filing system. I also certify that I have mailed by United States Postal Service this filing to counsel of record by placing same in the U.S. Mail, postage pre-paid, addressed as follows:

Bobby S. Gilliam
P.O. Box 1707
400 Travis Street
Shreveport, LA. 71166

_____
CHARLES A. NUNMAKER (La.No. 01510)
e-mail: cnunmaker@kfplaw.com
400 Poydras Street, Suite 2500
New Orleans, LA 70130
Telephone: (504) 299-3570
Facsimile: (504) 299-3582